Stephan SCHMIDHEINY

v.

Steven WEBER d/b/a/ Domainsale and Famology, Inc. and Famology.Com, Inc.

No. 01–377.

United States District Court, E.D. Pennsylvania.

July 31, 2001.

485

Arthur Newbold, Muchael S. Doluisio, Dechert, Price & Rhoades, Philadelphia, PA, Neil E. McDonnell, Lauren J. Mandell, Marc S. Reiner, Dorsey & Whitney, LLP, New York City, for plaintiff.

Anthony J. De Gidio, Calamunci Groth Joelson & Manore, Toledo, OH, for defendants.

**MEMORANDUM OPINION
AND ORDER**

WEINER, District Judge.

Plaintiff, Stephan Schmidheiny brought this action alleging violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1129. Following the court's denial of defendants' motion to dismiss the plaintiff's complaint, defendants filed their answer and counterclaims. The defendants allege claims of abuse of process and unfair competition, as well as a claim for declaratory relief that the ACPA is unconstitutional. Presently before the court is Schmidheiny's motion to dismiss the abuse of process and unfair competition claims. For the reasons which follow, the motion is granted.

For the purposes of the motion, we accept as true the allegations of the counterclaims. Defendants assert that Schmidheiny and his brother concocted a scheme to acquire all popular internet domain names which incorporate their proper names, thus depriving all other individuals named Schmidheiny from use of these domain names. Counterclaim ¶ 46. In the course of this scheme, plaintiff registered Schmidheiny.net and Schmidheiny.org., but were aware that Schmidheiny.com had already been registered by defendant Famology. Counterclaim ¶ 48–49. Defendants go on to assert that Schmidheiny stood silent for over a year waiting for defendants to offer the name for sale to him but they did not. Having no lawful basis to acquire ownership of a domain name which he coveted, Plaintiff drafted an ambiguous email (sic) to Weber offering to buy the domain name, hoping to entice him into violating 15 U.S.C. 1129. Counterclaim ¶ 50. Weber asserts he rejected the offer, but shortly thereafter was anonymously contacted by an individual expressing interest in buying the domain name. After this correspondence, Weber

advised Schmidheiny that the name would be available for sale. Counterclaim ¶ 51–52. Defendants assert that Schmidheiny then immediately filed this action with the improper motive of using it as leverage to force defendants to relinquish their rights to the domain name, knowing that defendants cannot afford to fund this litigation.

The Abuse of Process Claim.

■■■ In his motion, Schmidheiny argues that the defendants have failed to adequately allege an abuse of process claim. Abuse of process, as distinguished from a malicious prosecution claim, is concerned with a perversion of a civil process after it has been issued. *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987); *Morris v. Scardelletti,* C.A. No. 94–3557 (E.D.Pa. Nov. 23, 1994), 1994 WL 675461 at *10.

> The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it.... "An abuse is where the party employs it for some unlawful object, not the purpose which it intended by the law to effect."

*McGee,* 535 A.2d at 1023. The party asserting the claim must allege an ulterior motive and a use of the process for a purpose other than that for which it was designed. *Gilbert v. Feld,* 788 F.Supp. 854, 861 (E.D.Pa.1992). The essence of an abuse of process claim is that proceedings are used for a purpose not intended by the law. *Rosen v. Tesoro Petroleum Corp.,* 399 Pa.Super. 226, 582 A.2d 27, 32 (1990). Abuse of process usually pertains to situations involving "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." *Zappala v. Hub Foods, Inc.,* 683 F.Supp. 127, 129 (W.D.Pa.1988). There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion. *Shaffer v. Stewart,* 326 Pa.Super. 135, 473 A.2d 1017, 1019 (1984).

■■■ "The touchstone of the tort is that, subsequent to the issuance of process, a party has perversely, coercively, or improperly used that process." *Cameron v. Graphic Management Associates, Inc.,* 817 F.Supp. 19, 21 (E.D.Pa.1992). Thus, to state a counterclaim for abuse of process, defendants must assert that Schmidheiny (1) used a legal process against them; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused. *Hart v. O'Malley,* 436 Pa.Super. 151, 647 A.2d 542, 551 (1994). To constitute abuse of process, the challenged conduct must involve a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process. *Rosen,* 582 A.2d at 32. That judicial process was initiated with a bad motive is not enough; an allegation of coercive use of the process is required. *Id.* at 33.

■■■ Returning to the allegations at hand, defendants assert that Schmidheiny brought the first party complaint with the improper motive of using it as leverage to force defendants to relinquish their rights to the domain name, knowing that defendants cannot afford to fund this litigation. As the court in *Rosen* made clear, however, having an improper motive in bringing the action is not enough. Rather, there must be an allegation that the process is being used for a purpose other than that for which it was designed. The "process" at issue here is the first party summons and complaint. It was used by Schmidheiny for its obvious and intended purpose, to initiate the action and bring the defendants within the court's jurisdiction. We cannot perceive how the initial filing of a complaint alleging a statutory cause of action is analogous to "extortion by means

of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." Accordingly, we find the defendants fail to state a counterclaim for abuse of process based upon the initiation of the first party claims.

Unfair Competition by Reverse Domain Name Hijacking

■ Schmidheiny next argues that the unfair competition claim is legally deficient. The counterclaim alleges a cause of action for unfair competition based on a theory of reverse domain name hijacking. It asserts that "[b]y initiating frivolous litigation instead of arbitration and forcing the Plaintiff (sic) to engage in expensive Federal (sic) litigation simply to keep his property, plaintiff is attempting to assert rights to a domain name beyond those provided by law." Counterclaim at ¶ 72. Defendants go on to assert that Schmidheiny is attempting to restrain fair uses of a surname to which he has no sole rights, and that such actions are contrary to public policy. Counterclaim ¶ 73–74. They contend that rather than making a legitimate claim of cybersquatting, the plaintiff is attempting to reverse hijack the domain name and thus become the hijacker himself.

"A common law claim of unfair competition encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another." *Pa State Univ. v. University Orthopedics*, 706 A.2d 863, 867 (Pa.Super.1998). Unfair competition is "[a]nything done by a rival in the same business by imitation or otherwise designed or calculated to mislead the public in the belief that, in buying the product offered by him for sale, they were

buying the product of another manufacturer." *B.V.D. Co. v. Kaufmann & Baer Co.*, 272 Pa. 240, 116 A. 508, 508–509 (1922); *Paul Morelli Design, Inc. v. Merit Diamond Corp.*, 2000 WL 670029 at *1 (E.D.Pa.2000). "To state a common law claim for unfair competition, a claimant must allege a false description or designation of origin, false or misleading description of fact, or false or misleading representation of fact with respect to goods or services which is likely to deceive as to the origin of those goods or services and that the claimant has a reasonable basis to believe it has been injured by the false designation, description of fact or representation." *Paul Morelli* at *1, *International Hobby Corp. v. Rivarossi S.P.A.*, 1998 WL 376053 at *7, n. 7 (E.D.Pa.1998).

We find the allegations of the counterclaim fail to state a cause of action for unfair competition. First, there is no allegation that the parties are in business competition with each other. The only competition between them is the legal one over the right to the domain name Schmidheiny.com. Neither is there any allegation that the plaintiff has made a false description or designation of origin, false or misleading description of fact, or false or misleading representation regarding the origin of a product or service.

Moreover, irrespective of whether the common law is so elastic as to allow a cause of action where the parties are unquestionably not in business competition with each other, and there is no assertion of false designation of goods, palming off, or misappropriation of good will, we fail to see how the plaintiff's exercise of his federal statutory right to protect his personal name makes him liable as a reverse domain name hijacker.[1]

---

1. We note too that, while the claim asserts that Schmidheiny has no exclusive right to all

possible Schmidheiny domain names merely because that is his name, there is no assertion

■ Under 15 U.S.C. § 1129(1)(A), "[a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person." In passing the act, Congress has deemed that living persons have first dibs on the use of their own names as domain names. To the extent that exercise of that federal statutory right might make a plaintiff liable for state tort damages, we find such a cause of action would preempted.

Recently, the Third Circuit engaged in an extensive review of federal preemption law. See *Green v. Fund Asset Management, L.P.*, 245 F.3d 214 (3d Cir.2001). We quote the relevant portions of the opinion at length.

Federal law preempts, and thereby displaces, state law in three different situations: (1) "express preemption," (2) "field preemption" (which is also sometimes referred to as "implied preemption"), or (3) "conflict preemption."

Preemption is "express" when there is an explicit statutory command that state law be displaced.... An example of express preemption can be found in the Employee Retirement Income Security Act of 1974.... Preemption is "implied," and state law may be displaced, "if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." ... Finally, ... state law may be displaced under conflict preemption principles if the state law in question presents a conflict with federal law in one of two situations: when it is impossible to comply with both the state and federal law, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

.    .    .    .    .

The Supreme Court has held on multiple occasions that, when analyzing preemption issues, "because the States are independent Sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action...." Moreover, in making our analysis, the "purpose of Congress is the ultimate touchstone in every pre-emotion case."

*Green*, 245 F.3d at 222–224 (internal citations omitted). We find that the defendants claim presents a situation of conflict preemption since state tort law governing unfair competition, *in the manner in which these defendants seek to apply it*, would create an absolute obstacle to the accomplishment and execution of the full Congressional purposes and objectives in enacting ACPA.

ACPA, which in large part incorporates into the Lanham Act additional protections for domain names which are also protected as marks, amends that Act

to provide an explicit trademark remedy for cybersquatting under a new section 43(d). Under paragraph (1)(A) of the new section 43(d), actionable conduct would include the registration, traffick-

---

that any of the defendants would have any right to proceed under the ACPA since none of them have Schmidheiny as part of their personal names. To the extent that the unfair competition claim is based upon the plaintiff's attempt to unreasonable restrain the use of

the Schmidheiny name as a domain name, vis-a-vis others who might have a cause of action under ACPA, defendants would have no standing to bring such a claim on behalf of any other person named Schmidheiny.

ing in, or use of a domain name that is identical or confusingly similar to, or dilutive of, the mark of another, including a personal name that is protected as a mark under section 43 of the Lanham Act, provided that the mark was distinctive (i.e., enjoyed trademark status) at the time the domain name was registered, or in the case of trademark dilution, was famous at the time the domain name was registered. The bill is carefully and narrowly tailored, however, to extend only to cases where the plaintiff can demonstrate that the defendant registered, trafficked in, or used the offending domain name with bad faith intent to profit from the goodwill of a mark belonging to someone else. Thus the bill does not extend to innocent domain name registrations by those who are unaware of another's use of the name, or even to someone who is aware of the trademark status of the name but registers a domain name containing the mark for any reason other than with bad faith intent to profit from the goodwill associated with that mark.

.  .  .  .  .

Subsection (b) prohibits the registration of a domain name that is the name of another living person, or a name that is substantially and confusingly similar thereto, without such person's permission, if the registrant's specific intent is to profit from the domain name by selling it for financial gain to such person or a third party. While the provision is broad enough to apply to the registration of full names (e.g.johndoe.com), appellations (e.g.doe.com), and variations thereon (e.g. john-doe.com or jondoe.com), the provision is still very narrow in that it requires a showing that the registrant of the domain name registered that name with a specific intent to profit from the name by selling it to that person or to a third party for financial gain.

145 Cong.Rec. S14696 (daily ed. Nov. 17, 1999) (statement of Sen. Lott). It is clear from this legislative history that Congress intended to halt the trafficking in domain names protected by a mark or that are the personal names of another living person. Concomitantly, these individuals and mark holders are granted the ability to prevent others from using their names and marks in accordance with traditional precepts contained in the Lanham Act, as well as the right to seek injunctive relief to force the cybersquatter to transfer the domain name to the plaintiff if he attempts to profit from its sale. The ability to obtain injunctive relief is not triggered unless the alleged cybersquatter first offers the name or mark for sale with the intent to profit from the transaction.

We find the defendants' reverse domain name hijacking theory would render impossible the enforcement of this statutory cause of action. Under this theory, any action seeking possession of a domain name that is offered for sale with the requisite improper motive to the holder of the mark or the individual, would itself be actionable, making it impossible to both comply with state tort law and vindicate the plaintiff's federal statutory right. When state law is so used as to stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it is preempted. Accordingly, we find the counterclaim for reverse domain name hijacking, whether characterized as an unfair competition claim or otherwise, must be dismissed.

### ORDER

The motion of plaintiff Stephan Schmidheiny to dismiss defendants' first and third counterclaims is GRANTED.

The abuse of process and unfair competition counterclaims of defendants Steven Weber d/b/a/ Domainsale, Famology, Inc. and Famology.com, Inc. are DISMISSED.

IT IS SO ORDERED.