Stephan SCHMIDHEINY, An
Individual, Appellant

v.

Steven WEBER, d/b/a Domainsale
and Famology.com, Inc.;
Famology.com, Inc.

No. 02–1668.

United States Court of Appeals,
Third Circuit.

Argued Oct. 31, 2002.

Filed Feb. 11, 2003.

Neil E. McDonell (Argued), Marc S. Reiner, Dorsey & Whitney, New York, NY, for Appellant.

Anthony J. DeGidio (Argued), Toledo, OH, for Appellees.

Before NYGAARD and WEIS, Circuit Judges, and IRENAS,* District Judge.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The District Court granted summary judgment to Appellees Steven Weber and Famology.com, Inc., holding that the registration of *schmidheiny.com* is not covered by the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1129 (2002), because the domain name was initially registered by Steven Weber personally on February 28, 1999, before the Act took effect on November 29, 1999. Because we conclude that a subsequent registration by Famology.com, Inc. in June 2000 is an action within the purview of the Anti-cybersquatting Act, we will reverse.

With a net worth of $3.1 billion, Appellant Stephan Schmidheiny has been ranked among the wealthiest individuals in the world by *Forbes* magazine for the past three years. *The World's Billionaires*, FORBES, http://www.forbes.com/2002/02/28/billionaires.html. In November 2000, Appellee Steven Weber sent an email to Schmidheiny's assistant, offering to sell Schmidheiny the domain name of *schmidheiny.com*. At the time, the *schmidheiny.com* domain name was regis-

---

* The Honorable Joseph E. Irenas, Senior District Judge for the United States District Court for the District of New Jersey, sitting by designation.

tered to Appellee Famology.com, Inc. Weber is the President and Treasurer of Famology.com, Inc., and is listed as the administrative and technical contact for the *schmidheiny.com* domain name. Schmidheiny commenced this action, alleging that Appellees violated the Anti-cybersquatting Act.

Domain name registrars are organizations that keep track of Internet domain names and ensure that only one party controls a specific domain name during any given period. *See* Jonathan Weinberg, *ICANN and the Problem of Legitimacy*, 50 Duke L.J. 187, 216–17 (2000). To register a domain name, the party interested in the exclusive use of the domain name, the registrant, must contact a registrar, and enter into a contractual agreement with the registrar. *Id.* In exchange for the right to use the domain name for a fixed period of time, the registrant pays a certain sum of money and agrees to certain other conditions. *Id.*

According to the Anti-cybersquatting Act, "[a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person." 15 U.S.C. § 1129. The purpose of the Anti-cybersquatting Act is to "curtail one form of 'cybersquatting'—the act of registering someone else's name as a domain name for the purpose of demanding remuneration from the person in exchange for the domain name." 145 Cong. Rec. S14715 (daily ed. Nov. 17, 1999) (statement of Sen. Lott).

The Anti-cybersquatting Act provision at issue applies to "[a]ny person who registers a domain name that consists of the name of another living person . . . with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party." 15 U.S.C. S 1129. The provision does not define what a "person who registers" must do to fall within the scope of the statute, and the legislative history does not provide an explanation.

The District Court decided that the registration of *schmidheiny.com* was not covered by the Anti-cybersquatting Act because the domain name was *first* registered several months before the date when the statute became effective, and "the statute references only 'registrations,' not 'reregistrations.'" The District Court stressed that "Congress made a clear legislative choice that [the Anti-cybersquatting Act] is not to be applied retroactively," and focused on the "creation date" of *schmidheiny.com*—the date when the domain name was initially created. "[T]o consider a re-registration to be a registration," the District Court stated, "would enfog the bright line date established by the Act for actions under § 1129." According to the District Court, "the plain meaning of the word 'registration' as used by Congress imparts to us no other meaning but the initial registration of the domain name."

We disagree. We do not consider the "creation date" of a domain name to control whether a registration is subject to the Anti-cybersquatting Act, and we believe that the plain meaning of the word "registration" is not limited to "creation registration."

The words "initial" and "creation" appear nowhere in § 1129, and Congress did not add an exception for "non-creation registrations" in § 1129(1)(B). See *United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000) (explaining that when Congress provides excep-

tions in a statute, a court should infer that Congress considered the issue of exceptions and limited the exceptions to the ones set forth). The District Court's rationale that "if Congress chose to treat re-registrations as registrations, it could have used words appropriate to impart that definition," is not a sufficient reason for courts to infer the word "initial." Instead, we conclude that the language of the statute does not limit the word "registration" to the narrow concept of "creation registration." *See Sweger v. Chesney*, 294 F.3d 506, 516 (3d Cir.2002) (holding that if the language of a statute is plain, we need look no further to ascertain the intent of Congress).

Here, in March 2000, the named registrant for *schmidheiny.com* was "Weber Net" and the domain name registrar was Network Solutions, Inc.App. 373 at ¶ 46; App. 143. In June 2000, a new registrant, Famology.com, contractually bound itself in a new registration agreement with a new registrar, Internet Names Worldwide, to secure the *schmidheiny.com* domain name for a new one-year period. App. 373–74 at ¶¶ 46, 48–52; App. 143; App. 227; App. 173 at ¶ 11; App. 229. We hold that the word "registration" includes a new contract at a different registrar and to a different registrant. In this case, with respect to Famology.com—that occurs after the effective date of the Anti-cybersquatting Act.

To conclude otherwise would permit the domain names of living persons to be sold and purchased without the living persons' consent, ad infinitum, so long as the name was first registered before the effective date of the Act. We do not believe that this is the correct construction of the Anti-cybersquatting Act. We are therefore satisfied that Famology.com, Inc. engaged in a "registration" that is covered by the Anti-cybersquatting Act. We will reverse,

and remand the cause to the District Court for it to conduct further proceedings consistent with this opinion.