**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Abou SOW, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 2004.

Filed Sept. 28, 2004.

John Packel, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: LALLY–GREEN, OLSZEWSKI, JJ., and McEWEN, P.J.E.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Abou Sow, appeals from the judgment of sentence entered on January 22, 2003, following his conviction for trademark counterfeiting under 18 Pa. C.S.A. § 4119. Appellant argues that the trial court should have barred the prosecution because federal law preempts § 4119.

We disagree, and hold that federal law does not preempt § 4119. Accordingly, we affirm.

¶ 2 The trial court summarized the factual and procedural history of the case as follows:

This appeal follows Appellant's conviction on January 22, 2003, on two counts of Trademark Counterfeiting (F–3), in violation of [18 Pa.C.S.A.] § 4119. Appellant was before this Court, sitting without a jury, and stipulated to the following facts at trial:

On July 24, 2001, officers from the 16th district went to the area of 5400 Chester Ave in Philadelphia, and approached a stand that Appellant was working with clothing and movies on it. Officer Ruley approached Appellant and asked him the price of the movies, to which Appellant responded eight bucks for one, and two movies for the price of fifteen [sic]. At that time Appellant opened the door to a van parked directly behind him, inside which Officer Ruley observed numerous additional CD's and movies on videotape. The Officer then asked for a CD, which Appellant pulled out—from the artist titled Jada Kiss [sic]. Officer Ruley then asked for the price of everything—the two videotapes and CD—and was quoted twenty-two dollars by Appellant. Officer Ruley gave Appellant twenty-five dollars and was given three dollars back in change, along with the movies and CD that had been placed in a black plastic bag. Officer Ruley left the area and returned to his backup, where a representative from the motion picture and recording industry determined the items were counterfeit. Backup officers went to the stand,

arrested Appellant, took into custody the items on the table, and procured a search warrant for the van. Upon executing the warrant, police recovered (including the items on the stand) 561 movies on video tape, 294 compact discs, and 152 cassette tapes, all later determined by experts from the Recording Industry Association of America (RIAA) to be counterfeit.

Appellant was found guilty and sentenced to a negotiated term of three years reporting probation for both counts of trademark counterfeiting, for an aggregate sentence of six years probation. [Earlier in the case, the trial court denied Appellant's petition to bar the instant prosecution on the ground that § 4119 is preempted by federal trademark law.] This timely appeal follows.

Trial Court Opinion, 10/24/2003, at 1–2.[1]

¶ 3 Appellant raises one issue on appeal:

Did not the trial court err in denying defense counsel's Motion to Bar Prosecution under 18 Pa.C.S.A. § 4119, as Federal law preempts the statute, either in its totality or at a minimum as applied to the facts and circumstances of this particular case and Appellant?

Appellant's Brief at 3.

¶ 4 Appellant argues that the trial court should have barred the instant prosecution because federal law preempts § 4119. Because this issue presents a pure question of law, we employ a plenary scope of review and a *de novo* standard of review. *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1131 n. 2 (2003).

¶ 5 We begin with a brief discussion of the statute at issue.[2] Under § 4119, "any

---

**1.** Appellant filed a Concise Statement of Matters Complained of on Appeal under Pa.R.A.P. 1925, preserving the issue raised on appeal.

The trial court issued a Rule 1925 opinion on October 24, 2003.

**2.** Our research has revealed no case law interpreting § 4119, which was enacted in

person who knowingly manufactures, uses, displays, advertises, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting." 18 Pa.C.S.A. § 4119(a). The statute defines a "counterfeit mark" in relevant part as any unauthorized reproduction or copy of a trademark. 18 Pa.C.S.A. § 4119(i). A person who possesses more than 25 counterfeit items may be presumed to possess them with the intent to sell or distribute. 18 Pa.C.S.A. § 4119(b).

¶ 6 Trademark counterfeiting is generally graded as a first-degree misdemeanor. 18 Pa.C.S.A. § 4119(c)(1). The statute also provides for fines, seizure of the counterfeit items, and seizure of equipment used in connection with the trademark counterfeiting operation. 18 Pa.C.S.A. § 4119(f).

¶ 7 We now turn to the issue of preemption. Recently, our Supreme Court summarized the law of preemption as follows:

The Supremacy Clause of the United States Constitution prohibits states from enacting laws that are contrary to the laws of our federal government: "This Constitution and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. It is through this clause that the United States Congress may preempt state law. In determining whether a state regulation is preempted by federal law, we start "with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless it [is] the

clear and manifest purpose of Congress." *Cipollone v. Liggett Group,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)(citing *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299–300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Finally, a state enactment will be preempted where a state law conflicts with a federal law. *Id.* Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941). *Office of Disciplinary Counsel v. Marcone,* —— Pa. ——, 855 A.2d 654, 664, 2004 Pa. Lexis 1865, * 23–24 (2004); *see also, Werner v. Plater–Zyberk,* 799 A.2d 776 (Pa.Super.2002) (providing a comprehensive and scholarly discussion of preemption and concurrent state/federal jurisdiction), *ap-*

---

1996. We do observe that the statute protects both the trademark holders' interest in the integrity of their trademarks, and the general

public's interest in avoiding counterfeit merchandise.

*peal denied,* 569 Pa. 722, 806 A.2d 862 (2002).

¶ 8 Appellant argues the second theory of preemption set forth in *Marcone:* namely, that "Congress has legislated in [the] field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law." *Marcone, supra* at 664.[3] In support of this argument, Appellant provides an extensive history of federal legislation in the trademark arena. Appellant cites, *inter alia,* the passage of the Lanham Act in 1946; the Trademark Clarification Act of 1984; the Trademark Counterfeiting Act of 1984; the Trademark Law Revision Act of 1988; the Trademark Remedy Clarification Act of 1992; the Federal Trademark Dilution Act of 1995; the Anti–Counterfeiting Consumer Protection Act of 1996 (providing criminal penalties for trademark counterfeiting); the Trademark Law Treaty Implementation Act of 1998; the Trademark Amendments Act of 1999; and the Anti–Cybersquatting Consumer Protection Act of 1999.[4] Appellant argues that:

> The pervasive nature of federal legislation in this field evidences Congress's intent to preempt state law in this area.... This Court will find that Congress has made clear its intention to preempt all state laws "touching upon" trademarks that are interstate in nature. The more recent acts paint a clearer picture as they call for: federal monitoring of trademarks, an end to state immunity from civil suits, a more uniform system of dilution law where the "marks" themselves are afforded more protection, a uniform system for international trademarks, and most importantly

**federal criminal penalties** for trademark counterfeiting.

Appellant's Brief at 18.

¶ 9 In keeping with the presumption that federal law does not preempt state law absent clear Congressional intent, our appellate courts have been reluctant to declare implied field preemption. For example, in *Shulick v. PaineWebber, Inc.,* 554 Pa. 524, 722 A.2d 148 (1998), our Supreme Court held that the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* did not preempt the entire field of securities law. The Supreme Court did hold that the Securities Exchange Commission's comprehensive regulation of the narrow field of "order flow payments disclosure" preempted state law on that topic. The Court noted that the SEC intended to create a single, nationally-uniform rule relating to such disclosures. The purpose of the federal rule is to avoid burdening the securities industry with 50 different state regulations on this matter. *Id.* at 150–151. Thus, in this narrow field only, state law was preempted. *Id.*

¶ 10 Similarly, our Supreme Court held that the National Traffic and Motor Vehicle Safety Act of 1996 did not preempt the entire field of automobile safety, but it did preempt common law tort claims relating to air bags to the extent that such claims conflicted with Congress's intent to create a uniform national safety standard. *Cellucci v. GMC,* 550 Pa. 407, 706 A.2d 806 (1998).

¶ 11 Finally, in *Mazaika v. Bank One, N.A.,* 439 Pa.Super. 95, 653 A.2d 640 (1995), this Court held that the federal National Bank Act did not impliedly preempt the entire field of banking, to the

---

**3.** Appellant does not argue that any federal trademark statute **expressly** preempts state law.

**4.** *See,* 15 U.S.C.A. § 1051; 98 Stat. 2178; 106 Stat. 3567; 109 Stat. 985; 110 Stat. 1386; 112 Stat. 3064; 113 Stat. 218; 113 Stat. 1536.

exclusion of state law. The Court held that "[b]anking is an area in which Congress has not evidenced an intent to occupy the entire field to the exclusion of the states, and thus state legislatures may legislate in all areas not expressly or impliedly preempted by federal legislation." *Id.* at 643–644; *compare, Werner,* 799 A.2d at 791 (noting Congress's intent to fully occupy the field of bankruptcy and copyright law).

¶ 12 We now turn to the instant case. We agree with Appellant that Congress has taken significant action in recent years to add uniformity to trademark law and to provide increasing federal protection for trademarks. Ultimately, however, after a review of these statutes, we do not agree with Appellant that Congress has legislated so pervasively in this area as to demonstrate a clear intent "to occupy the given field to the exclusion of state law." *Marcone,* 855 A.2d at 664. In our view, the statutes cited by Appellant represent a series of gradual improvements to disparate aspects of federal trademark law. We see no concerted federal effort to preempt state trademark law generally, or state trademark infringement law specifically.

¶ 13 Next, we have discovered (and Appellant has cited) no federal or state case for the proposition that federal trademark law preempts any field or sub-field of state trademark law. Indeed, the case law we have discovered on this topic holds or implies that there is no field preemption. *See, Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.,* 202 F.3d 489 (2d Cir.2000), *cert. denied,* 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000); *Viacom Inc. v. Ingram Enters.,* 141 F.3d 886, 891 (8th Cir.

1998); *Nikon, Inc. v. Ikon Corp.,* 987 F.2d 91, 96 (2d Cir.1993); *Mony Life Ins. Co. v. Monie Fashions, Inc.,* 2004 WL 875929, 2004 U.S. Dist. Lexis 6989 (S.D.N.Y. April 21, 2004); *Reinhart v. Fleetway Chrysler,* 2002 WL 32102576, 2002 U.S. Dist. Lexis 25269 (E.D.Pa. Dec. 27, 2003); *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A.,* 702 F.Supp. 1031 (S.D.N.Y.1988), *overruled on other grounds,* 875 F.2d 308 (2d Cir.1989); *Connors v. Malik,* 1997 WL 694732, 1997 U.S. Dist. Lexis 17342 (W.D.Pa. Nov. 3, 1997); *Macia v. Microsoft Corp.,* 152 F.Supp.2d 535 (D.Vt.2001); *see also,* Harris & Burgess, "Compliance Planning for Intellectual Property Crimes", 2 Buff. Intell. Prop. L.J. 1, 14 ("Copyright protection, **unlike trade secrets or trademarks**, is exclusively the province of federal law.") (emphasis added).

¶ 14 We conclude that the statutes cited by Appellant do not impliedly preempt the entire field of state trademark law, or the narrower field of state trademark infringement. Appellant's claim of field preemption fails.

¶ 15 Finally, Appellant argues the third theory of preemption cited in *Marcone,* which is "conflict preemption." Again, "such a conflict may be found in two instances, when it is impossible to comply with both federal and state law, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Marcone,* 855 A.2d at 664 (citations omitted).

¶ 16 In the instant case, § 4119 does not create a situation where it is impossible to comply with both federal and state law.[5]

---

5. *Compare, Schmidheiny v. Weber,* 164 F.Supp.2d 484 (E.D.Pa.2001) (allowing a state law cause of action for "reverse domain name hijacking" would conflict with a trademark holder's federal rights under the Anti–

Cybersquatting Consumer Protection Act, so the state law cause of action was preempted), *reversed on other grounds,* 319 F.3d 581 (3rd Cir.2003); *Bicentennial Com. v. Olde Bradford Co.,* 26 Pa.Cmwlth. 636, 365 A.2d 172 (1976)

Trademark infringement is **both** a state crime and a federal crime. It is certainly possible to comply with both laws simply by avoiding trademark infringement. Next, Appellant has not articulated how the existence of state criminal penalties for trademark infringement stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Rather, state criminal penalties simply "complement[ ] and supplement[ ]" federal criminal penalties for trademark infringement. *See, Mead Data Central,* 702 F.Supp. at 1041. No conflict preemption exists; therefore, Appellant's final claim fails.

¶ 17 Judgment of sentence affirmed.

(federal law preempts state law which prohibits the copying of an article declared by federal law to be in the public domain).