## STATE'S ATTORNEY FOR PRINCE GEORGE'S COUNTY, ET AL. *v.* SEKULER

[No. 161, September Term, 1967.]

*Decided April 9, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, McWILLIAMS and FINAN, JJ.

*Anthony M. Carey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and

*William A. Linthicum, Jr., State's Attorney for Montgomery County* on the brief, for appellants.

*Francis S. Brocato* and *Joseph S. Kaufman* for appellee.

McWilliams, J., delivered the opinion of the Court.

The State Department of Assessments and Taxation produces and sells to the public maps which show the boundaries, the owners, the acreage and the deed references of all of the land in the counties of Maryland. Each map is about 24 by 36 inches and covers 7 square miles. When bound into books the maps are reduced in size to 12 by 18 inches. The price of a single map is $4. The books vary in price. Some are sold for $50; the prices of others range upwards to $150. Annual sales amount to more than $30,000.

Appellee (Sekuler) made a business of reproducing some of the maps and offering them for sale to the public. His advertisements in the newspapers indicated a Prince George's County set could be bought for $125 and a Montgomery County set for $100.

On 1 April 1966 a justice of the peace for Prince George's County issued two warrants for his arrest charging him with violating Code, Art. 81, § 232 A (1957) which reads as follows:

> "It is unlawful for any person or agency other than the Department to sell, trade, lease, offer to sell, trade or lease, or otherwise to transfer or convey for profit or anything of value, either singly or combined, any tax maps, property location maps, land classification maps, unit value maps, or other similar maps referred to or prepared under §§ 45 and 232 of this article, or to reproduce or duplicate such maps for said purposes. Any person who violates a provision of this section is guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not to exceed fifty dollars ($50) for each offense."

Three similar warrants were issued, at the same time, by a Montgomery County justice of the peace. Sekuler was convicted, on appeal by the State, by the Circuit Court for Prince

George's County and fined $50 in each case. In Montgomery County the State submitted to an entry of *nolle prosequi* in all three cases.

Sekuler's bill for a decree declaring Code, Art. 81, § 232 A to be "unconstitutional, invalid and void" and for an injunction restraining the State from enforcing it was filed 13 March 1967. At the hearing before Judge Powers on 19 May 1967 the parties stipulated that the State, in March 1967, initiated a "program of copyrighting all [the then unissued] state tax maps pursuant to the Federal Copyright Act." It should be observed that we express no opinion in respect of the validity of any of the copyrights obtained by or on behalf of the State.[1] Sekuler testified, without contradiction, that he did nothing more than reproduce the State's maps, all bearing the State's legend, and that he did nothing to suggest or imply they were the product of his own work. On the same day, Judge Powers, in an oral opinion, held Sekuler had standing to sue and that § 232 A was unconstitutional because "the Federal Government has preempted the field to the exclusion of the states in the area of copyrighting, and that this act [§ 232 A] is an attempt to create a state monopoly in a manner other than copyrighting." In this appeal the State does not contest Judge Power's holding in respect of Sekuler's standing to sue. It seems also to be conceded that some State agencies copyright their publications before offering them for sale to the public. The State Roads Commission, for instance, copyrights annually the official highway map and the Hall of Records Commission copyrights "The Maryland Manual." Indeed, this volume and all of its predecessors, since 88 Maryland (1898), have been copyrighted on behalf of the State. The only question before us, therefore, is the constitutionality vel non of the statute (§ 232 A).

Sekuler insists, and we agree, that the companion cases of *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U. S. 225 (1964) and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U. S. 234 (1964) are controlling here. In *Sears* the Stiffel Company secured design and mechanical patents on a "pole lamp"—a vertical tube

---

1. See generally 18 C.J.S., *Copyright & Literary Property*, §§ 61-62.

having lamp fixtures along the outside, the tube having been made so that it will stand upright between the floor and the ceiling of a room. Sears began the sale, at a lower price, of a substantially identical lamp. The District Court (Ill.) held the patents to be invalid but it enjoined Sears from selling the lamp and ordered an accounting to fix profits and damages resulting from the "unfair competition" prohibited by the law of Illinois. The Court of Appeals affirmed. 313 F. 2d 115 (7th Cir. 1963). In reversing the judgments below the Supreme Court, without dissent, speaking through Mr. Justice Black, said:

"Thus the patent system is one in which uniform federal standards are carefully used to promote invention while at the same time preserving free competition. Obviously a State could not, consistently with the Supremacy Clause of the Constitution, extend the life of a patent beyond its expiration date or give a patent on an article which lacked the level of invention required for federal patents. To do either would run counter to the policy of Congress of granting patents only to true inventions and then only for a limited time. Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws.

"In the present case the 'pole lamp' sold by Stiffel has been held not to be entitled to the protection of either a mechanical or a design patent. An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so. What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws. That Stiffel originated the pole lamp and made it popular is immaterial. 'Sharing in the goodwill of an article unprotected by patent or trade-mark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested.' *Kellogg Co. v. National*

*Biscuit Co.,* \* \* \* [305 U.S. 111, 122 (1938)]. To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public. The result would be that while federal law grants only 14 or 17 years' protection to genuine inventions, see 35 U.S.C. §§ 154, 173, States could allow perpetual protection to articles too lacking in novelty to merit any patent at all under federal constitutional standards. This would be too great an encroachment on the federal patent system to be tolerated." *Id.* at 230-232.

In *Compco,* the companion case, Mr. Justice Black said:

"\* \* \* Today we have held in *Sears, Roebuck & Co. v. Stiffel Co., supra,* that when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy, found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and *copyright laws* leave in the public domain. Here Day-Brite's fixture has been held not to be entitled to a design or mechanical patent. Under the Federal patent laws it is, therefore, in the public domain and can be copied in every detail by whoever pleases. It is true that the trial court found that the configuration of Day-Brite's fixture identified Day-Brite to the trade because the arrangement of the ribbing had, like a trademark, acquired a 'secondary meaning' by which that particular design was associated with Day-Brite. But if the design is not entitled to a design patent or other federal statutory protection, then it can be copied at will.

"As we have said in *Sears,* while the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which re-

quires those who make and sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original. That an article copied from an unpatented article could be made in some other way, that the design is 'nonfunctional' and not essential to the use of either article, that the configuration of the article copied may have a 'secondary meaning' which identifies the maker to the trade, or that there may be 'confusion' among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, and regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling. Cf. *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 120 (1938). And of course a State cannot hold a copier accountable in damages for failure to label or otherwise to identify his goods unless his failure is in violation of valid state statutory or decisional law requiring the copier to label or take other precautions to prevent confusion of customers as to the source of the goods.

"Since the judgment below forbids the sale of a copy of an unpatented article and orders an accounting for damages for such copying, it cannot stand." *Id.* at 237-239. (Emphasis supplied.)

*Sears* and *Compco* were followed by a "rash of lower court decisions," [2] to say nothing of the comment in legal periodicals,[3] both in the patent and the copyright areas. As the State

**2.** *Estate of Hemingway v. Random House,* 279 N. Y. S. 2d 51 (Sup. Ct. 1967); *G. P. Putnam's Sons v. Lancer Books, Inc.,* 239 F. Supp. 782 (D. N. Y. 1965); and *Cable Vision, Inc. v. KUTV, Inc.,* 335 F. 2d 348 (9th Cir. 1964), *cert. den.,* 379 U. S. 989 (1965).

**3.** See, for example, Treece, *Patent Policy and Preemption: The Stiffel and Compco Cases,* 32 U. of Chi. L. Rev. 80 (1964).

points out there are some copyright cases [4] which seem not to follow *Sears* and *Compco* but they are distinguishable from the instant case chiefly because they are concerned with "misappropriation" and "unfair competition" laws. But § 232 A is not an "unfair competition" statute. Indeed, § 232 A appears to be unique. Sekuler says, and the contrary does not appear, that no other state has a similar statute. It is not aimed at the prohibition of any use which would mislead the public as to the source of the maps; it simply prohibits absolutely their reproduction or duplication for the purpose of selling them for profit thereby creating a monopoly for the State. Thus defenses which might be available to a defendant in an unfair competition suit would, with few exceptions, be useless in a prosecution under § 232 A.

The State suggests that because "uncertainty reigns among [other] state and lower federal courts regarding the reach of the preemption doctrine of *Sears* and *Compco* in the copyright area" that we should be reluctant to embrace a doctrine which "invalidates state unfair competition suits." We do not agree that "uncertainty" is, in fact, the prevailing condition and while it is true that the complex and unusual circumstances of a few cases (cited in note 4, *supra*) have led some courts to what may seem to be disparate results, the narrow simplicity of the instant case makes escape from *Sears* and *Compco* very difficult indeed. Moreover, despite *Sears* and *Compco,* we think the State is free to seek relief against the "unfair competition" of Sekuler in the equity courts. *Edmondson Vil. Theatre v. Einbinder,* 208 Md. 38, 116 A. 2d 377 (1955). We refrain, of course, from essaying an appraisal of its chances of success. Our holding in the case at bar, therefore, goes no further than a declaration that § 232 A is in conflict with the Federal Copyright Law, Title 17, U.S.C. §§ 1 et seq., and that by virtue of

---

4. *Grove Press, Inc. v. Collectors Publications, Inc.,* 264 F. Supp. 603 (D.C. Cal. 1967); *Pottstown Publishing Co. v. Pottstown Broadcasting Co.,* 247 F. Supp. 578 (E. D. Pa. 1965); *Flamingo Telefilm Sales, Inc. v. United Artists Corp.,* 254 N. Y. S. 2d 36 (Sup. Ct. 1964).

the Supremacy Clause of the Federal Constitution, Art. VI, it is invalid.

*Judgment affirmed.*

*Costs to be paid by the State of Maryland.*