636

Bicentennial Commission of Pennsylvania and Ernest P. Kline, Lt. Governor of the Commonwealth of Pennsylvania and Chairman of the Bicentennial Commission of Pennsylvania, and Commonwealth of Pennsylvania, by Robert P. Kane, Attorney General, Plaintiffs *v.* The Olde Bradford Company, Inc., W. Thomas Morris and Edith Dixon Morris, Defendants.

Argued September 10, 1976, before President Judge Bowman and Judges Mencer and Blatt, sitting as a panel of three.

*Melvin R. Shuster,* Deputy Attorney General, with him *Gerry J. Elman,* Deputy Attorney General, *J. Justin Blewitt, Jr.,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for plaintiffs.

*William A. Van Brunt,* with him *McNees, Wallace & Nurick,* for defendants.

Opinion by Judge Mencer, October 22, 1976:

This case is before us on preliminary objections filed by the defendants to plaintiffs' complaint in equity. Plaintiffs are seeking an injunction and an accounting, as well as other equitable relief for the alleged misuse of the seal of the Pennsylvania Bicentennial Commission (Commission)[1] on certain items of decorative metalware manufactured by defendant

---

[1] A disc or circle containing therewithin: "1776-1976"; outline map of Pennsylvania; picture of Liberty Bell; Bohr representation of atom; and the words "PENNSYLVANIA BICENTENNIAL" flanking a keystone shape.

Olde Bradford Company, Inc. (Olde Bradford). Defendants have demurred to the four counts in plaintiffs' complaint and have raised a defense of laches, as well as other preliminary objections. We will discuss the demurrer first.

It is well settled that preliminary objections in the nature of a demurrer admit as true all well-pleaded facts in the plaintiff's complaint. *Kutsenkow v. Kutsenkow,* 414 Pa. 610, 202 A.2d 68 (1964). However, conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinion are not admitted. *Firing v. Kephart,* Pa. , 353 A.2d 833 (1976).

With these principles in mind, we will summarize the facts as they appear in the complaint. On April 14, 1970, the Commission adopted its official seal. Later that year, on September 30, 1970, the Commission licensed Wilton Brass Company (Wilton) to manufacture and sell to the general public certain decorative metalware items bearing the seal. As part of the agreement, Wilton was to pay the Commission a specified royalty on each item sold. This agreement was modified on January 15, 1975. From the date of the original agreement to the present, Wilton has produced and offered for sale items bearing the seal.

On May 29, 1973, the Commission registered the seal as a service mark under the Act of September 26, 1951, P.L. 1518, *as amended,* 73 P.S. §12 et seq. (Trademark Law), and as an emblem under the Act of May 5, 1927, P.L. 778, 54 P.S. §41 et seq. (Emblem Act). The Commission filed a notice that it had adopted the seal on May 4, 1974 in the Pennsylvania Bulletin at 4 Pa. B. 892. The notice contained a reproduction of the seal, as well as a statement that permission from the Commission was required for use of the seal. Further notice to the same effect appeared at 5 Pa. B. 2291.

Defendant Olde Bradford has, both before and after May 29, 1973, manufactured items bearing the seal similar or identical to the items manufactured by Wilton. Plaintiffs contend that defendants have (1) violated Section 4.1(b) of the Bicentennial Commission of Pennsylvania Act[2] (Bicentennial Act), (2) infringed the Commission's service mark, (3) misused the registered emblem of the Commission, and (4) engaged in deceptive practices under the Unfair Trade Practices and Consumer Protection Law.[3] We will examine each contention to see whether it states a claim for which relief may be granted.

## I

We will consider first count three which alleges wrongful use of an emblem. The Emblem Act provides in Section 1, 54 P.S. §41, for registration of the emblems of "[a]ny association, lodge, order, fraternal society, beneficial association, or fraternal and beneficial society or association, historical, military, or veterans' organization, labor union, foundation, federation, or any other society, organization, or association, degree, branch, subordinate lodge, or auxiliary thereof, whether incorporated or unincorporated, the principles and activities of which are not repugnant to the Constitution and laws of the United States or this Commonwealth. . . ." Section 8, 54 P.S. §48, allows an injunction to issue against any person employing a duly registered emblem, "unless he, she, it or they shall be entitled to wear, exhibit, display, or use the same under the constitution, rules, and regulations of the association or organization which shall have registered the same." Our examination of the complaint reveals no allegation of a rule, regulation,

---

[2] Act of July 12, 1968, P.L. 330, *as amended*, 71 P.S. §1047.14a(b).
[3] Act of December 17, 1968, P.L. 1224, 73 P.S. §201-1 et seq.

or constitution of the Commission limiting the privileges of display to any group or groups of persons. Moreover, the statute as a whole is clearly designed to protect the membership of societies of a generally fraternal nature from misuse of their insignia. The Commission, notwithstanding the broad language of Section 1, is not such an organization. Therefore, the demurrer to count three of plaintiffs' complaint is sustained.

## II

The remaining counts of plaintiffs' complaint pose unique and difficult questions concerning the relationship between the federal laws pertaining to intellectual property[4] and the power of the states to prohibit unfair competition and deceptive trade practices. Defendants' demurrer to counts one, two, and four rests on the theory that the representation embodied in the seal is a work of art registrable under the federal copyright laws. 17 U.S.C.A. §5(g), (h). They argue further that since the representation was published without the requisite notice,[5] it is in the public domain and may be freely reproduced by anyone in any manner.[6] Defendants also assert that any attempt by the Commonwealth to restrict the use of a work in the public domain is preempted by federal law, as announced in *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.* 376 U.S. 234 (1964).

---

[4] Specifically, 15 U.S.C.A. §1051 et seq. (trademarks); 17 U.S.C.A. §1 et seq. (copyrights); and 35 U.S.C.A. §1 et seq. (patents).

[5] 17 U.S.C.A §§10 and 19 deal with notice.

[6] *See National Comics Publications, Inc. v. Fawcett Publications, Inc.*, 191 F.2d 594 (2d Cir. 1951); *Irving J. Dorfman Co. v. Borlan Industries, Inc.*, 309 F. Supp. 21 (S.D.N.Y. 1969); *Klasmer v. Baltimore Football, Inc.*, 200 F. Supp. 255 (D. Md. 1961).

Plaintiffs, on the other hand, contend that their complaint rests on the theory that state laws may, in certain instances, restrict unfair competition and deceptive practices, notwithstanding the federal statutory scheme embodied in the patent and copyright laws. We will examine these conflicting contentions, mindful of the well-settled policy that judgment in favor of a demurring party should not be entered where there is any doubt as to the propriety of such a judgment. *Buchanan v. Brentwood Federal Savings & Loan Assn.*, 457 Pa. 135, 320 A.2d 117 (1974). Only when it is clear that the demurring party is entitled to judgment in his favor should the demurrer be sustained. *Schrader v. Heath*, 408 Pa. 79, 182 A.2d 696 (1962).

Although the laws governing copyrights and trademarks may overlap as applied to a single item, they are intended to grant quite different forms of protection to their holders. By complying with the federal copyright statute, an author secures the sole right to copy the protected work and to license others to produce copies.[7] The holder of a copyright may exploit his work commercially; however, he may also exercise the copyright in a purely proscriptive manner to prevent anyone from copying the protected work.[8]

Trademark and service-mark protection, however, is based on common law concepts of unfair competition.[9] The holder of such a mark cannot make a merely prohibitive use of the mark; nor does the mark exist except as part of an ongoing, operating business.[10] As part of the larger law of unfair competi-

---

[7] *American Tobacco Co. v. Werckmeister*, 207 U.S. 284 (1907).

[8] *Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932).

[9] *Trademark Cases*, 100 U.S. 82 (1879).

[10] *See generally United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918); *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916).

tion, the purpose of a trademark or service mark is to prevent confusion as to the origin of goods or services and to prevent fraud and misrepresentation as to their source.[11] The federal statutory scheme embodied in the Lanham Act, 15 U.S.C.A. §1051, et seq., clearly does not preempt a state from providing for local registration of trademarks.[12] In addition, the usual common law and statutory remedies for unfair competition may exist even without local trademark registration.[13]

The Supreme Court, in *Sears, Roebuck & Co. v. Stiffel Co., supra,* held invalid an Illinois law under which the mere copying or production of an item identical to an unpatented and uncopyrighted article was said to constitute unfair competition. In so holding, the Supreme Court found that a state law which attempts to prohibit the copying of an article in the public domain is preempted by federal laws which implement Article I, Section 8, Clause 8 of the United States Constitution.[14] Defendants argue that such a state law therefore cannot be the basis of a cause of action. However, in a companion case, *Compco v. Day-Brite Lighting, supra,* the Court stated:

"[W]hile the federal patent laws prevent a State from prohibiting the copying and selling of unpatented articles, they do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify

---

[11] *American Steel Foundries v. Robertson,* 269 U.S. 372 (1926); *United Drug Co., supra* note 10; *Hanover Star Milling Co., supra* note 10.

[12] *Compco v. Day-Brite Lighting, supra.*

[13] *McVey v. Brendel,* 144 Pa. 235, 22 A. 912 (1891).

[14] That clause gives to Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. . . ."

their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original." 376 U.S. at 238.

This principle, as applied to the case at bar, would seem to indicate that if a count in plaintiffs' complaint alleges facts sufficient to make a claim cognizable under the state law of unfair competition, the demurrer should not be sustained. On the other hand, if a count states a claim based on the mere copying of the unprotected design, a demurrer should be sustained. We hold that counts two and four successfully allege causes of action cognizable under state laws which seek to protect the public from being deceived as to the origin or sponsorship of the goods in question here. Plaintiffs will be allowed the opportunity to prove at trial the elements necessary to support a claim of service-mark infringement and deceptive or unfair trade practices. The demurrer as to counts two and four is dismissed.

### III

A different problem, however, is presented by count one of the complaint which alleges a violation of the Bicentennial Act. Section 4.1(b) of that act, added by the Act of July 25, 1975, P.L. 99, §2, 71 P.S. §1047.14a(b), states:

"(b) No person, partnership, corporation or other entity, except as authorized by the commission, shall use, manufacture, sell, reproduce, counterfeit, copy, colorably imitate or otherwise use in a manner likely to cause confusion, to cause mistake or to deceive, any mark adopted by the commission, or any item bearing such mark, or apply any such mark to labels, signs,

prints, packages, wrappers, receptacles or advertisements intended to be used upon, or in connection with, the manufacture, sale, offering for sale, distribution, or advertising of goods or services."

This section purports to prohibit both any unauthorized reproduction of the Commission marks (including the seal) and use "in a manner likely to cause confusion, to cause mistake or to deceive. . . ." The section has elements of the law of unfair competition as well as the law of copyrights. Although language similar to that found in state unfair-competition laws is present, we find no statement in the act which specifies the parties to be protected or the type of confusion to be avoided. It appears clear, therefore, that the dominant intent of the Act is to prohibit, as does federal copyright law, the mere unauthorized production of the Commission's marks.[15] As such, the state law should be preempted. *Sears, supra.*

The plaintiffs urge, however, that the restrictions on a state's power found in *Sears* and *Compco* have been substantially weakened, if not overruled, by *Goldstein v. California,* 412 U.S. 546 (1973). In *Goldstein,* the Supreme Court stated in its majority opinion:

"Although the Copyright Clause thus recognizes the potential benefits of a national system, it does not indicate that all writings are of national interest or that state legislation is, in all cases, unnecessary or precluded. The patents granted by the States in the 18th century show, to the contrary, a willingness on the part of the States to promote those portions of science and the arts which were of local importance. Whatever the diversity of people's backgrounds, origins and interests, and whatever the variety of business and industry in the 13 Colonies, the range

---

[15] *See also State's Attorney for Prince George's County v. Sekuler,* 249 Md. 499, 240 A.2d 608 (1968).

of diversity is obviously far greater today in a country of 210 million people in 50 States. In view of that enormous diversity, it is unlikely that all citizens in all parts of the country place the same importance on works relating to all subjects. Since the subject matter to which the Copyright Clause is addressed may thus be of purely local importance and not worthy of national attention or protection, we cannot discern such an unyielding national interest as to require an inference that state power to grant copyrights has been relinquished to *exclusive* federal control." 412 U.S. at 556-58 (footnote omitted, emphasis in original).

This language, standing alone, seems to support plaintiffs' position fully. However, when read in its entirety, it is clear that the holding is not so expansive. While the Supreme Court held that there is nothing *theoretically* which prevents a state from enforcing its own copyright statute where the statute will not conflict with the federal law, it also found that the challenged California statute was valid *only because Congress had not acted to exercise its power* to allow copyrighting of the sound recordings at issue in that case. Thus, there could be no possibility of conflict between the state law and the *dormant* federal power. The conclusion of the court's opinion makes this narrow reading of the case abundantly clear:

"We conclude that the State of California has exercised a power which it retained under the Constitution, and that the challenged statute, as applied in this case, does not intrude into an area which Congress has, up to now, pre-empted. *Until and unless Congress takes further action with respect to recordings fixed prior to February 15, 1972,[16] the California*

---

[16] During the pendency of the *Goldstein* case, Congress had enacted an amendment to the copyright law allowing registration of sound recordings. The amendment only applied to acts of infringement occurring after February 15, 1972.

*statute may be enforced* against acts of piracy such as those which occurred in the present case. 412 U.S. at 571 (emphasis and footnote added).

It is clear that Congress has acted to protect representations such as the one in the case at bar.[17] Therefore, we find that, in this instance, the Commonwealth is preempted from enforcing this portion of the Bicentennial Act which purports to forbid the copying of an article in the public domain. Defendants' demurrer to count one must therefore be sustained.

Defendants have also raised a question of laches by way of preliminary objections.[18] While this defense may be determined on preliminary objections if laches clearly appears on the face of the complaint in equity, *Holiday Lounge, Inc. v. Shaler Enterprises Corp.,* 441 Pa. 201, 272 A.2d 175 (1971), the complaint should only be dismissed when the issue is clear and free of doubt. *Beaver v. Penntech Paper Co.,* 452 Pa. 542, 307 A.2d 281 (1973). We cannot say that laches is evident from the face of this complaint; therefore, we are of the opinion that the facts and circumstances surrounding the defense of laches should be marshalled at a hearing. *See generally Schireson v. Shafer,* 354 Pa. 458, 47 A.2d 665 (1946).

We find defendants' other preliminary objections to be without merit. Therefore, we enter our

## ORDER

Now, this 22nd day of October, 1976, the demurrer of the defendants as it relates to counts one and three of plaintiffs' complaint is sustained. The defendants' remaining preliminary objections are overruled, and defendants are allowed 20 days from this date within which to file an answer to plaintiffs' complaint.

---

[17] By 17 U.S.C.A. §5(g) and (h).

[18] Pa. R.C.P. No. 1509(b).