Stephen T. LUPINETTI, Petitioner

v.

DEPARTMENT OF STATE,
Respondent.

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.
Decided June 7, 2007.

William E. Otto, Monroeville and Brian W. Ashbaugh, Pittsburgh, for petitioner.

Martha H. Brown, Asst. Counsel, Harrisburg, for respondent.

Peter J. King, Pittsburgh, for intervenor, Michele J. Alexander.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, SIMPSON, Judge.

OPINION BY Judge SIMPSON.

Stephen T. Lupinetti (Lupinetti) petitions for review of an order of the Secretary of the Commonwealth (Secretary), on behalf of the Department of State (Department), which denied Lupinetti's petition to cancel trademarks. Pursuant to Section 1116(a) of the Pennsylvania Trademark Act (PTMA), 54 Pa.C.S. § 1116(a) Lupinetti petitioned to cancel the marks "Miss Pittsburgh" and "Miss Pittsburgh®." Michele J. Alexander, individually, and trading as WinACrown by Lily Entertainment (Second Registrant), intervenes in this appeal. For the following reasons, we affirm.

## I. Background

In January 1996, Coronation, Inc., by its president, Lori Sikorszky (First Registrant), filed an application with the Department for registration of the mark "Miss Pittsburgh," a title awarded to the annual winner of the Miss Pittsburgh pageant. On the same day, the Department registered the mark as entity # 2673230.

In October 1996, First Registrant applied for registration of the mark in the U.S. Patent and Trademark Office (USPTO). In response, another Pittsburgh area pageant conductor filed a notice of opposition with the USPTO's Trademark Trial and Appeal Board (Trademark Board). First Registrant did not answer, and the Trademark Board entered a default judgment against First Registrant. Consequently, the USPTO refused First Registrant's application for registration.

Lupinetti became involved with the Miss Pennsylvania Scholarship Organization in 1997. The Miss Pennsylvania organization, affiliated with the Miss America organization, gave Lupinetti a franchise to conduct a local Miss Pittsburgh contest in the Pittsburgh area. Lupinetti conducted a Miss Pittsburgh scholarship pageant in 1997, 1998 and 1999. After a reprieve for work-related travel, Lupinetti again conducted the pageant in 2003, 2004 and 2005.

First Registrant conducted a Miss Pittsburgh pageant in 1997. Second Registrant's daughter, Shani J. Alexander, won the pageant. Approximately six months later, First Registrant returned to graduate school and turned over the Miss Pittsburgh pageant to Second Registrant. Second Registrant and her daughter operated a Miss Pittsburgh pageant every year since 1998. Lupinetti and Second Registrant are former friends; Lupinetti served as a judge at several of Second Registrant's pageants. In 2003 and 2004, Lupinetti co-directed a pageant for the Miss America organization called Miss Pittsburgh/Miss Golden Triangle. However, Second Registrant decided she could no longer work with Lupinetti because of problems with the 2004 Miss Pittsburgh/Miss Golden Triangle pageant.

In October 2004, Second Registrant applied to the Department for assignment of registration of the "Miss Pittsburgh" mark, identified in the application as "Miss Pittsburgh®," from First Registrant to Second Registrant. The application did not contain a response to an inquiry about

First Registrant's application for USPTO registration. Second Registrant did not indicate the USPTO previously refused First Registrant's request for federal registration. The Department effected the assignment, but simply recorded the mark as "Miss Pittsburgh."

In August 2005, Lupinetti, pursuant to 54 Pa. C.S § 1116(a),[1] filed a petition to cancel the marks "Miss Pittsburgh" and "Miss Pittsburgh®." In response, Second Registrant applied for renewal of the mark "Miss Pittsburgh," entity # 2673230, showing an assignment from First Registrant. In the renewal application, Second Registrant did indicate the USPTO entered a default judgment against First Registrant and refused registration. The Department granted the application and renewed the mark, "Miss Pittsburgh," in Second Registrant's name.

In his petition to cancel, Lupinetti alleged various grounds for cancellation under 54 Pa.C.S. § 1116(a), including failure to timely renew under the new five-year renewal requirement in 54 Pa.C.S. § 1114(a), erroneous registration based upon First Registrant's misrepresentation as to first use, geographic descriptiveness, abandonment, and improper assignment. Second Registrant filed a timely reply.

Thereafter, the Secretary held an adjudicatory hearing at which both Lupinetti and Second Registrant presented evidence. In his subsequent decision, the Secretary made the following relevant conclusions of law:

3. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation under [54 Pa.C.S. § 1116(a)(1)], because it was renewed within 10 years of the date it was registered, in accordance with [54 Pa.C.S. § 1114(a)] (Findings of Fact, Nos. 6–7, 31–33).

4. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation under [54 Pa.C.S. § 1116(a)(3)(ii)], on grounds that a default judgment of the [Trademark Board] of the [USPTO] found that the registrant is not the owner of the mark, *because the [Trademark Board] is not a court of competent jurisdiction.* (Findings of Fact, Nos. 8–12).

5. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation under [54 Pa.C.S. § 1116(a)(3)(iii)] on grounds that default judgment of the [Trademark Board] of the [USPTO] found that the registration was not granted improperly, *because the [Trademark Board] is not a court of competent jurisdiction.* (Findings of Fact, Nos. 8–12)

1. 54 Pa.C.S. § 1116(a), governing cancellation of trademarks, provides, in relevant part (with emphasis added):

(a) **General rule.**—The department shall cancel from the register under this chapter:
(1) All registrations under this chapter which are not renewed in accordance with this chapter.
. . . .
(3) *Any registration concerning which a court of competent jurisdiction shall find:*
(i) That the registered mark has been abandoned.
(ii) That the registrant is not the owner of the mark.

(iii) That the registration was granted improperly.
(iv) That the registration was obtained fraudulently.
. . . .
(4) When a court of competent jurisdiction shall order cancellation of a registration on any ground.
(5) *Any registration in the following circumstances:*
. . . .
(iv) *When a registered mark has been abandoned or discontinued for a period of at least five years subsequent to registration and such abandonment and nonuse still persists.*

6. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation under [54 Pa.C.S. § 1116(a)(5)(iv)], because, even if [First Registrant] abandoned or discontinued the registration between 1997 and the date [First Registrant] assigned the mark in 2004, *such abandonment or nonuse has not persisted since assignment of the mark.* (Findings of Fact, Nos. 6–7, 20–21, 26–33).

7. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation on grounds that the registration was granted improperly *because the Department is not a court of competent jurisdiction and only a court of competent jurisdiction, under [54 Pa. C.S. § 1116(a)(3)(iii)] has the authority to make such a finding.*

8. The "Miss Pittsburgh" mark registered to entity number 2673230 is not subject to cancellation on grounds that [Second Registrant] illegally used the "®" in connection with the mark *because the Department is not a court of competent jurisdiction, and only a court of competent jurisdiction under [54 Pa. C.S. § 1116(a)(4)], [has the authority to cancel a registration on any grounds].*

Sec's Adj. at 9–10 (emphasis added).

■ Based on the above conclusions, the Secretary denied Lupinetti's petition to cancel trademarks. Lupinetti petitions for review.[2]

## II. Issues

Lupinetti advances four arguments. First, he asserts the Secretary erred by ruling the Department lacked subject matter jurisdiction to cancel the mark at issue

where the Department registered the mark in error based on an alleged misrepresentation as to first use by the First Registrant and/or because the mark is primarily geographically descriptive. Second, Lupinetti argues the Secretary erred as a matter of law by ruling it lacked subject matter jurisdiction to cancel the mark on abandonment grounds.

Third, Lupinetti maintains the Secretary erred by ruling the 2004 assignment to Second Registrant effective without considering: the impact of abandonment of the mark prior to the assignment; the differences between the registered mark, "Miss Pittsburgh," and the mark claimed assigned, "Miss Pittsburgh®;" the bare assignment of the mark without the concurrent transfer of the goodwill or business assets associated with the mark; and the effect of the 2004 assignment to a defunct, dissolved or non-existent partnership. Fourth, Lupinetti contends the Secretary erred by ruling the mark, "Miss Pittsburgh," is the same as the mark "Miss Pittsburgh®" and not a misrepresentation, despite federal law that provides the use of the ® symbol indicates a federally registered trademark.

## III. Improper Registration

Lupinetti first contends the Secretary erred by holding the Department lacks subject matter jurisdiction to cancel the "Miss Pittsburgh" mark because the Department registered it in error, based on First Registrant's misrepresentation as to first use and/or because the mark is primarily geographically descriptive.

■ Citing Section 811 of the Administrative Code of 1929 (Admin.Code),[3] Lupi-

---

2. Our review is limited to determining whether the Secretary's findings were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Barran v. State Bd. of Medicine,* 670 A.2d 765 (Pa.Cmwlth.1996).

3. Act of April 9, 1929, P.L. 177, *as amended,* added by the Act of June 3, 1963, P.L. 63, 71 P.S. § 279.2.

netti argues the Department is authorized to cancel any mark where it is registered in error, or because the mark is primarily geographically descriptive. Section 811, 71 P.S. § 279.2, states (with emphasis added):

> If any person, association, copartnership or corporation has obtained from the Department of Public Instruction or obtains from the Department of State or the responsible agency, board, commission or commissioner therein a certificate, license, permit or *registration by fraud or misrepresentation, such department, administrative agency, board, commission or commissioner shall have the power to cancel such certificate, license, permit or registration* after giving reasonable notice and opportunity to be heard.
>
> The provisions of this act shall be construed as supplementary to all other acts dealing with the same subject matter. No action brought under the provisions of this act shall prevent the prosecution or institution of any civil or criminal action otherwise provided by law for violation of any licensing act or rule or regulation promulgated thereunder.

Lupinetti argues the Department too narrowly construed 54 Pa.C.S. § 1116(a) by inserting the word "only" into 54 Pa. C.S. § 1116(a)(3)'s requirement that the Department cancel a registration where a "court of competent jurisdiction shall find" improper registration or abandonment.

The Department responds it lacks subject matter jurisdiction under 54 Pa.C.S. § 1116(a)(3), to determine improper registration issues. It argues Section 811 of the Admin. Code, upon which Lupinetti relies, is inapplicable because it pertains to certificates, licenses and registrations for professions, trades and occupations. In Pennsylvania trademarks are registered and not licensed in the same manner as professions, trade and occupations; therefore, Section 806 of the Admin. Code, pertaining to the Department's authority to register trademarks, is applicable. Section 806, 71 P.S. § 276, provides (with emphasis added):

> The [Department] shall have the power, and its duty shall be, to register foreign corporations desiring to transact business in this Commonwealth; and to register the names, titles, or designations of associations, societies, and corporations of the first class, the assumed or fictitious names under which individuals carry on or conduct business, *upon application duly made, trade marks,* trade-names, labels, bottle descriptions, union labels, badges, emblems, and applications for license to manufacture or distill and sell ethyl alcohol, *in accordance with the several acts of Assembly providing for such registrations,* and to register all other matters or things for the registration of which in the office of the Secretary of the Commonwealth provision may now or hereafter be made by law.

Relying on this statute, the Department asserts the specific provisions of the PTMA prevail over the general provisions of the Admin. Code. Thus, the Department argues, 54 Pa. C.S § 1116(a), governing cancellation of mark registrations, is controlling here.

We agree. The plain language in 54 Pa.C.S. § 1116, indicates the legislature's intent to vest jurisdiction in the Department to cancel registrations in a particular manner and under specified authority. The Department's authority under 54 Pa. C.S. §§ 1116(a)(1)-(5), to cancel Pennsylvania trademark registrations is narrowly circumscribed. The Department is authorized to determine the merits of a cancellation petition in only four circumstances. *See* 54 Pa.C.S. § 1116(a)(5)(i-iv).

The only ground applicable here is subsection (5)(iv) (abandonment of registered mark for a period of five years; abandonment still persists). All other grounds for cancellation alleged here must first be established in a court of competent jurisdiction before the Department is authorized to cancel the mark. 54 Pa.C.S. §§ 1116(a)(3),(4).

Lupinetti responds by citing 54 Pa.C.S. §§ 1111–1113, 1122, governing registration requirements and the application process. These provisions, Lupinetti asserts, indicate the Department's implicit authority to correct its own mistakes prior to a court proceeding. Therefore, Lupinetti maintains the doctrine of exhaustion of administrative remedies requires the Department rule on the petition to cancel trademarks prior to an appeal to a court of competent jurisdiction.

We disagree. The legislature vested the Department with the authority to approve registration applications under 54 Pa.C.S. §§ 1111–1113. However, with the exception of the four grounds specified in 54 Pa.C.S. § 1116(a)(5)(iv), the legislature did not vest the Department with the authority to adjudicate challenges to registered marks and cancel the marks absent an order of cancellation from a court of competent jurisdiction. 54 Pa.C.S. §§ 1116(a)(3),(4).

Consequently, we discern no error in the Secretary's determination that the Department lacks subject matter jurisdiction to determine improper registration or abandonment on grounds other than those listed in 54 Pa.C.S. § 1116(a)(5)(iv). Having determined the Department lacks jurisdiction under 54 Pa.C.S. §§ 1116(a)(3),(4), to determine improper registration, we need not address Lupinetti's arguments that the Department erroneously registered the mark based on misrepresentation as to first use or because the mark is primarily geographically descriptive.

## IV. Abandonment

In this argument, Lupinetti maintains the Department erred by not cancelling the mark under 54 Pa.C.S. § 1116(a)(5)(iv),[4] because First Registrant abandoned the mark in 1997 and did not assign it to Second Registrant until 2004. During those seven years, Lupinetti asserts, both Lupinetti and Second Registrant used the Miss Pittsburgh mark. Under 54 Pa.C.S. § 1116(a)(5)(iv), the Department shall cancel any registration:

> When a registered mark has been abandoned or discontinued for a period of at least five years subsequent to registration and such abandonment and nonuse still persists.

The PTMA, at 54 Pa.C.S. § 1102, defines "abandoned" as follows (with footnote added):

> A mark shall be deemed "abandoned" when either of the following occurs:
> (1) When its use has been discontinued with intent not to resume such use.[5] Intent not to resume may be inferred

---

**4.** Lupinetti also contends the Secretary erred by finding the Department lacked authority to cancel the Miss Pittsburgh mark on abandonment grounds under PTMA § 1116(a)(3)(i). As discussed above, Subsection (a)(3)(i) authorizes the Department to cancel an abandoned registered mark only after a court of competent jurisdiction rules the mark abandoned.

**5.** The PTMA defines "use" in relevant part, as follows: "The bona fide use of a mark in the ordinary course of trade and not merely to reserve a right in a mark. For the purposes of this chapter, a mark shall be deemed to be in use: ... (2)[o]n services when it is used or displayed on the sale or advertising of services and the services are rendered in this Commonwealth." 54 Pa.C.S. § 1102.

Further, the PTMA defines "registrant" as "[a]ny person who registers a mark under this chapter, or the legal representatives, successors or *assigns* of such person." *Id.* (emphasis added).

from circumstances. Nonuse for two consecutive years shall constitute prima facie evidence of abandonment.

(2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to lose its significance as a mark.

As noted above, the Secretary determined, even assuming First Registrant abandoned the registration between 1997 and the 2004 assignment to Second Registrant, "such abandonment has not persisted since assignment of the mark." Sec.'s Adj., C.L. No. 6. Thereafter, the Secretary explained his ruling on this issue (emphasis added):

In analyzing section 1116(a)(5)(iv), the Secretary notes that the analysis involves two parts and that both parts must be satisfied in order to warrant cancellation of a registration under this section. The first part of the analysis is whether the mark has been abandoned or discontinued for a period of at least five years subsequent to registration. Whether or not [First Registrant] abandoned the mark depends on whether or not [First Registrant] first assigned the mark to [Second Registrant] in 1998, as [Second Registrant] contends, or whether or not [First Registrant] first assigned the mark to [Second Registrant] in 2004 as [Lupinetti] contends. *The answer to this question is immaterial because, even if [First Registrant] abandoned the mark for a period of at least five years subsequent to its registration, [Lupinetti] has failed to satisfy the second part of the analysis.*

*Under the second part of the analysis, the Secretary would have to find that the abandonment and nonuse still per-*

sists. *This is clearly not the case.* Documents filed with the Department indicate that [First Registrant] assigned the mark to [Second Registrant] in 2004 and that [Second Registrant] renewed the mark in 2006 based upon this assignment. *While it is true that [First Registrant] did not hold any Miss Pittsburgh contests after the 1997 contest, it is also true that, as of the date of the hearing on January 27, 2006, [Second Registrant] had been operating the pageant every year since 1998. Based on these facts, even if [First Registrant] abandoned or discontinued the use of the "Miss Pittsburgh" mark from 1997 until the assignment in 2004, it is clear that this abandonment and nonuse does not still persist because [First Registrant] assigned the mark in 2004, [Second Registrant] used the mark in connection with her annual beauty pageant subsequent to the 2004 assignment, and [Second Registrant] renewed the mark in 2006 based upon the 2004 assignment.* Therefore, the Secretary does not have grounds for the cancellation of the "Miss Pittsburgh" mark under section 1116(a)(5)(iv)....

Sec.'s Adj. at 20–21 (emphasis added).

█ Primarily, Lupinetti argues the mark is abandoned because First Registrant last used it in 1997 and then left the Pennsylvania market. Thereafter, Lupinetti asserts, both Lupinetti and Second Registrant used the mark, and during this time, Second Registrant made no attempt to prevent Lupinetti's use of the mark.

Additionally, Lupinetti contends the Secretary's rationale, that the 2004 assignment[6] and subsequent use, constitutes a

---

**6.** 54 Pa.C.S. § 1115, governing assignments, states in part:

(a) **General rule.**—Any mark and its registration under this chapter shall be assignable with the goodwill of the business in which the mark is used or with that part of the goodwill of the business connected with the use of and symbolized by the mark. Assignment shall be by instrument in writing, duly executed, and may be recorded with the department. A registrant may record an assignment to itself to reflect of

revival of the mark, is erroneous. Lupinetti asserts the Secretary merely assumed the validity of the 2004 assignment. He alleges the Secretary ignored the issues of whether assignment constitutes a "use," and whether an abandoned mark can be revived by a party with no ownership interest.

Lupinetti also argues the 2004 written and recorded assignment from First Registrant to Second Registrant constituted a "bare assignment" which did not indicate a transfer of the goodwill and assets of the business. He asserts that a sale or assignment of a trademark separate and apart from the business in which it is used is invalid. In support, Lupinetti cites *Bicentennial Commission v. Olde Bradford Co., Inc.*, 26 Pa.Cmwlth. 636, 365 A.2d 172 (1976) (trademark does not exist except as part of ongoing, operating business); *Beauty Time, Inc. v. VU Skin Systems., Inc.*, 118 F.3d 140 (3d Cir.1997) (Pennsylvania common law trademarks protections only apply when the trademark is validly acquired).

Further, Lupinetti argues, an abandoned mark becomes part of the public domain and, at such time, usable by any party. *See Browning King of New York, Inc. v. Browning King Co.*, 176 F.2d 105 (3d Cir.1949) (abandoned trade name lies in the public domain).

The Department responds that the Secretary correctly determined Lupinetti failed to prove either abandonment of the "Miss Pittsburgh" mark for five years or persistence of any abandonment. The Department cites the Secretary's findings that First Registrant selected Second Registrant and her daughter to operate the

pageant after the 1997 contest and that they operated the Miss Pittsburgh pageant in 1998 and every year since then. Sec.'s Adj., F.F. Nos. 21–22.

The Department also cites First Registrant's October 2004 assignment of the mark, "Miss Pittsburgh®," to Second Registrant. *See* Notes of Testimony (N.T.), Def.'s Ex. 29. In August 2005, Second Registrant renewed the "Miss Pittsburgh" mark. N.T., Def.'s Ex. 42.

As noted above, the Secretary determined that even if First Registrant abandoned the registration between 1997 and the 2004 assignment to Second Registrant, such abandonment did not persist beyond 2004, when Second Registrant recorded the assignment. Thus, Lupinetti failed to establish grounds for cancellation under 54 Pa.C.S. § 1116(a)(5)(iv).

We agree. Lupinetti's abandonment arguments are contrary to the Secretary's findings, which are supported by the record. Second Registrant testified First Registrant turned the Miss Pittsburgh pageant over to her, along with the assets, prior to the 1998 pageant. That enabled Second Registrant to successfully produce the pageant in 1998 and every year thereafter. *See* N.T. at 77–85. The Secretary accepted Second Registant's testimony as fact. F.F. Nos. 19–22.

For the same reason, Lupinetti's "bare assignment" argument is also meritless. The Secretary found First Registrant turned the pageant over to Second Registrant in 1998. This finding is supported by the record.

Further, the Secretary found, "[a] few months after [Second Registrant] filed the

record a change in the name of the registrant.
**(b) Unrecorded assignments.**—An assignment of any registration under this chapter shall be void as against any subsequent purchaser for valuable consideration and

without notice, unless it is recorded with the department not later than the earlier of:
(1) three months after the date of the assignment; or
(2) such subsequent purchase.

[a]pplication for [a]ssignment, she received a response that the assignment was effective." Sec's Adj., F.F. No. 29. As the parties acknowledge, the Department has the authority under 54 Pa.C.S. §§ 1111–13, 1122 to refuse registration due to noncompliance with registration requirements. Here, the Department approved the assignment application and recorded the "Miss Pittsburgh" mark as now registered to Second Registrant.

Moreover, Second Registrant used the mark after the 2004 assignment. Thus, we need not determine whether an assignment is a "use" under the PTMA. Even assuming the mark was abandoned or out of use until the 2004 assignment, Second Registrant used the Miss Pittsburgh mark after First Registrant assigned it to her. Also, Second Registrant renewed it in 2005. As a result, the Secretary correctly concluded Lupinetti failed to establish the second prong of the abandonment test in 54 Pa.C.S. § 1116(a)(5)(iv), that abandonment and/or nonuse still persists. Consequently, Lupinetti's abandonment argument fails.

## V. Validity of 2004 Assignment

In this argument, Lupinetti asserts the Secretary erred by ruling the 2004 assignment effective without considering the impact of several factors. Specifically, Lupinetti contends the Secretary failed to consider the impact of the abandonment of the mark prior to the assignment; the differences between the registered mark, "Miss Pittsburgh," and the mark assigned, "Miss Pittsburgh®;" the alleged assignment without the concurrent transfer of the good will or assets associated with the mark; or, the effect of an assignment to a defunct, dissolved or nonexistent partnership.

The 2004 assignment became effective a few months after Second Registrant filed the application. Further, the Department lacks subject matter jurisdiction to decide the merits of a challenge to a registered mark except in the four circumstances set forth in 54 Pa.C.S. § 1116(a)(5). Therefore, challenges to the 2004 assignment must be raised in a court of competent jurisdiction under 54 Pa. C.S §§ 1116(a)(3),(4). With the statutory limitation on the Department's subject matter jurisdiction in mind, we review Lupinetti's challenges to the 2004 assignment.

### A. Abandonment; Bare Assignment of Mark

To begin, Lupinetti again alleges First Registrant abandoned the mark in 1997 and both Lupinetti and Second Registrant used it without First Registrant's permission. Lupinetti contends an abandoned mark becomes part of the public domain and thus cannot be assigned. He also reasserts his "bare assignment" argument, that First Registrant did not transfer the goodwill and assets of the business enterprise to Second Registrant.

As discussed above, Lupinetti's abandonment claim is contrary to the record and the Secretary's findings. The Secretary found First Registrant turned the assets and goodwill of the pageant over to Second Registrant. Sec.'s Adj, F.F. No. 19. This finding is supported by the record.

Further, only a court of competent jurisdiction may order cancellation on the grounds advanced in this argument. The Secretary lacks subject matter jurisdiction over Lupinetti's other challenges to improper registration based on an ineffective assignment.

### B. Assignment of Different Mark

Lupinetti next argues the mark assigned in 2004, "Miss Pittsburgh®," is different from the mark registered in 1996, "Miss Pittsburgh." By ignoring the difference in the two marks, Lupinetti asserts, the Sec-

retary erred as a matter of law by holding the 2004 assignment validly transferred the "Miss Pittsburgh" mark to Second Registrant.

As previously discussed, pursuant to 54 Pa. C.S §§ 1116(a)(4), only a court of competent jurisdiction has the authority to order cancellation of a registration "on any ground," such as the ground advanced in this argument.

Moreover, "Miss Pittsburgh" is the only mark registered at entity # 2673230. The 2004 assignment references entity # 2673230. Although the 2004 assignment included a specimen with the ® symbol, the Department informed Second Registrant she could not use the ® symbol. Thereafter, Second Registrant removed it from all pageant materials and related items.

Considering the foregoing, the Secretary did not err by identifying the Miss Pittsburgh mark, entity # 2673230, as the only mark at issue in this case.

### C. Defunct Assignee

■ Lupinetti next challenges the validity of the 2004 assignment on the ground the 2004 application for assignment identifies the assignee as WinACrown, which Lupinetti asserts is a registered fictitious name for a partnership consisting of Rockman, Inc., SJA Star Industries, Inc. and Michele J. Alexander (Second Registrant). *See* N.T., Def.'s Ex. 46.

The Secretary found WinACrown "was formerly a partnership between [Second Registrant] as President and CEO of Rockman, Inc. and as the Secretary and Vice–President of SJA Star Industries, Inc. and Shani J. Alexander, as CEO and Treasurer of SJA Star Industries, Inc." Sec.'s Adj., F.F. No. 4.

Rockman, Inc., a Florida corporation, lost its corporate charter in 1987. Therefore, Lupinetti maintains, Rockman, Inc. no longer existed as a WinACrown partner. Citing Section 8351 of the Uniform Partnership Act, 15 Pa.C.S. § 8351,[7] Lupinetti argues the WinACrown partnership dissolved when Rockman, Inc. ceased being involved in the business. Lupinetti thus claims the Secretary erred by not considering whether the partnership existed at the time of the assignment and, accordingly, whether the assignment effectively transferred ownership of the mark.

Lupinetti's challenge fails for legal and factual reasons. Legally, sections 8353–54 of the Uniform Partnership Act, 15 Pa.C.S. §§ 8353–54, set forth grounds for voluntary or involuntary dissolution of a partnership. None are applicable here.

Factually, regardless of the demise of Rockman, Inc., the principals of WinACrown were Second Registrant and her daughter. There is no evidence they intended to dissolve the WinACrown partnership prior to the 2004 assignment. Consequently, the WinACrown partnership remained intact until Second Registrant and her daughter dissolved it in October 2005. *See* N.T., Ex. R–1. WinACrown is now a registered fictitious name for Second Registrant. Sec.'s Adj., F.F. No. 5.

### VI. Misrepresentation by Use of ® Symbol

Here, Lupinetti maintains the Secretary erred by not strictly construing the 2004 assignment documents which clearly indicate First Registrant assigned the "Miss Pittsburgh®" mark, not the "Miss Pittsburgh" mark. Because Second Registrant used the "Miss Pittsburgh®" mark, Lupi-

---

**7.** "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on, as distinguished from the winding up, of the business." 15 Pa.C.S. § 8351.

netti asserts, Second Registrant's rights in the "Miss Pittsburgh" mark should be terminated and the mark cancelled. Lupinetti thus again argues the Secretary erred by finding the two marks to be identical.

In addressing this issue, the Secretary observed Lupinetti failed to identify any section of the PTMA authorizing the Department to cancel a validly registered mark based on use of the ® symbol, which indicates federal registration. *See* Sec.'s Adj. at 24. Further, only a court of competent jurisdiction may cancel a registration on such a ground. *See* 54 Pa. C.S §§ 1116(a)(4).

Finally, as discussed above, "Miss Pittsburgh" is the only mark registered at entity # 2673230. Although the 2004 assignment contained a specimen with the ® symbol the Department recorded the assigned mark as "Miss Pittsburgh," not "Miss Pittsburgh®." Further, in 2005, Second Registrant renewed the "Miss Pittsburgh" mark. Thus, the Secretary properly determined "Miss Pittsburgh" the only mark at issue in this case.

Discerning no error in the Secretary's adjudication and order, we affirm.[8]

### *ORDER*

AND NOW, this 7th day of June, 2007, the order of the Secretary of the Commonwealth, Department of State, is **AFFIRMED.** Further, Intervenor Alexander's Motion for Permission to File a Reply Brief is **GRANTED.** Petitioner Lupinetti's Motion to Strike Intervenor Alexander's Brief is **DENIED,** consistent with the foregoing opinion.

---

8. We note Lupinetti, in his Reply Brief, requests we strike Second Registrant's Intervenor's Brief based on alleged violations of the Rules of Appellate Procedure including failure to properly cite to the reproduced record or provide a supplemental record; unsupported reliance on federal law; and failure of form of brief to comply with the appellate rules.

   Also pending is Second Registrant's motion for permission to file an Intervenor's Reply Brief. In her Intervenor's Reply Brief, Second Registrant asserts Pa. R.A.P. 2102 requires an intervenor's brief to follow the brief format for the party for which the intervenor is principally aligned. Here, Second Registrant is aligned with the appellee. An appellee's brief need only contain a summary of argument and argument. On consideration of Lupinetti's request, we find Second Registrant's Intervenor's Brief complies with the Rules of Appellate Procedure. Therefore, we deny Lupinetti's request to strike Second Registrant's Intervenor's Brief.

   Further, given the additional argument in Lupinetti's Reply Brief, we grant Second Registrant's motion for permission to respond in an intervenor's Reply Brief.